IN RE TAXES, GAY & ROBINSON,
A COPARTNERSHIP.

NO. 2973.

Argued January 19-20, 1955.     Decided February 11, 1955.

Towse, C. J., Le Baron and Stainback, JJ.

OPINION OF THE COURT BY STAINBACK, J.

This case involves cross appeals from the tax appeal court. The evidentiary facts in the case are not in dispute, the major portions appearing in a stipulation of facts filed by the parties and in several exhibits.

The taxpayer, Gay & Robinson, a copartnership, owns lands at Makaweli, Kauai; its business is agricultural, primarily the raising of sugar cane which formerly had been processed into raw sugar by Hawaiian Sugar Company. Parts of the land had previously been under lease to the Hawaiian Sugar Company, which lease expired in 1941 and was never renewed, the Hawaiian Sugar Company going out of business.

When the Hawaiian Sugar Company lease expired Gay & Robinson arranged with Brewer & Company, agents for a new plantation, Olokele Sugar Company, for a lease of the portion of its lands formerly leased to Hawaiian Sugar Company and a proposed transfer to Olokele of certain crops of cane on Gay & Robinson lands which had not been included in the lease to Hawaiian Sugar Company but were to be included in the new lease. The proposals in

substance were accepted by the agents for the plantation on April 2, 1941, and the terms of the proposed lease as agreed upon were set forth in a lease dated July 15, 1944, effective as of January 1, 1942. An abbreviated copy of this lease is an exhibit in this case, such non-material facts as descriptions of lands, etc., being omitted.

The new lease divided the lands at Mahinauli Gulch, the lands lying on the east being leased to Olokele and the lands on the west being retained by Gay & Robinson for its own sugar plantation. In the lands to be leased to Olokele were certain cane fields being cultivated by Gay & Robinson. In the agreement Gay & Robinson were to continue this cultivation until the effective date of the new lease and the growing crops would be sold to Olokele on the payment of $65,000 plus reimbursement of Gay & Robinson's costs and expenses of cultivation up to January 1, 1942, when the Gay & Robinson lease was to go into effect.

However, on January 1, 1942, it appeared more advantageous to both parties for Gay & Robinson to continue the cultivation of all cane on this portion of the land and to receive the expenses of such cultivation from Olokele Sugar Company.

In August, 1942, Olokele paid to Gay & Robinson the sum of $65,000, plus expenses of $221,690.71 incurred by Gay & Robinson in cultivating the crop to January 1, 1942, and $26,015.79 for the cultivation of the growing crop after the lease went into effect, namely, January 1, 1942.

The sugar lands leased to Olokele and those retained by Gay & Robinson are watered by the Olokele and Kula ditches; the water originates on Gay & Robinson lands well above the sugar lands.

Under the terms of the lease Gay & Robinson agreed to maintain and operate these ditches to the points at which water is delivered by them to Olokele and to supply

water therefrom for use by Olokele upon the premises demised; the water was to be divided fifty-seven per cent to Olokele and forty-three per cent to Gay & Robinson, and Olokele was to pay fifty-seven per cent of the costs of such maintenance of the ditches and Gay & Robinson forty-three per cent. Gay & Robinson did maintain and operate the ditches and were paid therefor by Olokele $94,312.23, being fifty-seven per cent of such cost of maintenance and operation of the ditches.

Neither the amount of the payment to Gay & Robinson for fifty-seven per cent of the cost of the maintenance of ditches, nor the cost of cultivating the growing crops prior to the taking effect of the lease of January 1, 1942, nor costs subsequent thereto, which crops were to be transferred to Olokele as of January 1, 1942, were returned as gross receipts by Gay & Robinson.

The contention of the taxpayer is that the lease and "agreement" sets forth a joint venture between the Robinson partnership and the Olokele Sugar Company, Limited, and that one party to the joint venture who pays out on its behalf certain sums and is repaid is not liable for such receipts as gross income. This position is strenuously urged as to the fifty-seven per cent cost of the maintenance of the ditch which is maintained by Gay & Robinson and fifty-seven per cent of its expenses "reimbursed" by Olokele Sugar Company, Limited.

The taxpayer further contends that the sale of the growing crop by Gay & Robinson to Olokele was not taxable because it was a "casual sale" not in the regular course of its business, and the expenses of Gay & Robinson incurred after January 1, 1942, and repaid by Olokele were not taxable. This latter was repayment of an agent by the principal.

On the other hand the tax assessor contends that the taxpayer and Olokele constituted separate enterprises and

were not engaged in a joint venture; that the gross receipts of the taxpayer derived from the delivery of water through its ditch system were taxable as collections made at cost for services rendered or a rental of land with water; that said payments were gross receipts and that the transfer of the crop upon the inception of the lease was not a sale, and even if it were a sale the proceeds would be taxable (although admittedly at a lower rate).

The tax appeal court held that the payments relative to the upkeep of the ditches and the water irrigation system were taxable as gross income because the lease as written "quite definitely makes the water an integral part of the lease of the land and therefore the payment for the water, whether in the form of a bulk payment or a percentage payment as is the case here, is considered as additional rent as payment relative to the payment of taxes and like sums would also be considered payment of additional rent." It held, secondly, that the payments received relative to the cultivation of land to be leased to the Olokele Sugar Company constituted a casual sale when this lease was made, that the casual sale payments extended only up to January 1, 1942, but that the cultivation contract after January 1, 1942 was not a part of the sale, and that the amount received after January 1, 1942, would be subject to the gross income tax. The court also held that the amount received for the sale of seed cane to the Olokele Sugar Company was also subject to the tax; that the $65,000 which was actually paid was returned as gross income and therefore was not involved in the appeal.

From that part of the decision holding that payments relative to the upkeep of ditches and the water irrigation system and payments for the cultivation of cane after January 1 were subject to gross income tax, the taxpayer appealed; from that portion of the decision holding that payments made for the cultivation of the cane on land to

January 1, 1942, that was to be leased to the Olokele Sugar Company were not taxable, the tax assessor appealed.

It is a little difficult to see anything but a landlord and tenant relation between the partnership and the corporation. Each grows its separate crop of sugar cane, produces its own sugar, and separately markets it. Though both crops are ground at the same mill, each party receives its own particular sugar. There is no sharing of possession of the premises maintained by the partnership with Olokele, and the taxpayer warranted to Olokele exclusive possession of that portion of the lands leased to it. Olokele does not share with the taxpayer the possession of any of the ditches outside of its own boundaries and delivery of water is by the lessor to the boundaries of the lessee's premises. Though the rental for the lessee's lands is paid by percentages of the crop, this ordinarily does not give rise to any joint enterprise or partnership. Further, it would appear that the lands leased are, to a large extent, useless at least for the growing of sugar cane without the water. The leasehold obviously is a lease of lands and water by the lessor. It would thus appear that payment for the land and the water, whether paid for in specific amounts or a percentage of the crops or a percentage of the upkeep of the ditch or partly one and partly another, is rental, as the tax appeal court found, and thus subject to taxation as gross receipts; or, if an attempt is made to separate the water from the land, it is payment for services in furnishing water to the land. Whichever view is taken, the result is the same.

As to the payments made on account of expenses of the growing cane crop to be transferred to Olokele on January 1, 1942, the taxpayer contends that this was a "casual" sale of the growing crop and did not come within the provisions of the gross receipts tax law. On the other hand, the tax assessor claims that this amount was proceeds

flowing from the leasing of the land and was not a sale, but if a sale was taxable as gross receipts.

The agreement of the parties in April, 1941, provided that the growing crops on the land to be leased to Olokele on January 1, 1942, should be transferred to Olokele and Olokele should pay therefor $65,000 plus costs in cultivating such crop up to January 1, 1942.

While the title did not pass on April 1, 1941, there was an agreement to sell at a fixed price, namely, $65,000 plus all expenses of cultivation up to January 1, 1942, when title to the cane would be transferred.

We agree with the tax appeal court in holding that this was a sale of personal property but the court erred in holding that this amount was not taxable because a "casual" sale.

As noted, section 5455 of the Revised Laws of Hawaii 1945 provides the measure of tax shall be "values, gross proceeds of sales or gross income, as the case may be." Gross income is defined by section 5444 so as to include "the gross receipts of the taxpayer derived from trade, business, commerce or sales * * *"; also "the value proceeding or accruing from the sale of tangible personal property, or service, or both, and all receipts * * * by reason of the investment of the capital of the business engaged in * * *"; that such income and proceeds of sale are to be computed *"without any deductions on account of the cost of property sold, the cost of materials used, labor cost, taxes, royalties, interest or discount paid or any other expenses whatsoever."* (Emphasis added.)

This was a gross receipt of sales within the taxpayer's business. The taxpayer is engaged in raising sugar cane, cattle and other agricultural products, and while the sale of immature sugar cane was not the customary method with Gay & Robinson in disposing of such products, the fact that this was sold before being processed into sugar

does not take it outside of the business receipts of the taxpayer.

Obviously the tax appeal court was confused by the provision defining "business" and "engaging in business" which stated that such activities "shall not include casual sales" and by the federal decisions taxing the profit from casual sales on the basis of capital gains rather than income from a business.

In other words, where a man simply sells a piece of property and is not engaged in producing such or the business of selling such, he is not engaged in business. A man might sell his automobile which he used as a family car, or his furniture, without being an automobile dealer or a second-hand furniture dealer and taxed on such as a business. On the other hand, the taxpayer might even refine some of the raw sugar and sell it; or, if by chance some of the molasses fermented and was converted into alcohol and sold as such, all such products would be from the taxpayer's agricultural products, whether processed or unprocessed, produced by the taxpayer and within the course of the business. Therefore, the expenses of $221,690.71 plus the $65,000 received from the sale of the growing crop should be taxed as gross receipts but it should be at the lower rate of taxation of sales.

Likewise, as found by the tax appeal court, the amount received from the sale of seed cane to Olokele Sugar Company is subject to tax.

As to the amount refunded to Gay & Robinson for cultivation of cane owned by Olokele subsequent to January 1, 1942, this should not be taxable as it is merely a refund of money to an agent by the owner for bringing its crop to maturity.

The decision of the tax appeal court is SUSTAINED: (1) in so far as it holds that the payments by Olokele Sugar Company to Gay & Robinson relative to the upkeep

and repair of the ditches and water irrigation system are taxable as gross income; (2) that the amount received from the sale of seed cane to Olokele Sugar Company is taxable as gross income. It is REVERSED: (1) in holding that the payments received by Gay & Robinson for the cultivation prior to January 1, 1942, of the land to be leased to Olokele Sugar Company was not taxable as gross receipts; (2) in holding that the payment by Olokele to Gay & Robinson for the cultivation of its cane subsequent to January 1, 1942, was taxable income.

*F. D. Padgett* (*Robertson, Castle & Anthony* with him on the briefs), for Gay & Robinson, appellant.

*R. V. Lewis,* Deputy Attorney General (also on the briefs), for Tax Commissioner.